The following opinion (accidentally omitted in its proper place,) was delivered by Nash, J., in the case of Toole v. Stancill & al., ante p. 394 :
Nash, J.
The case is here upon the'bill and demurrer, A bill in Equity is a statement of the complainant’s case, showing his right or title to what he claims. It must state whatever is essential to his right to a recovery, with reasonable certainty and with such precision, as to enable the Chancellor to decide by inspection upon the proper decree. The plaintiff, after stating the injury he sustains-, from the nature of the relation existing between himself and the defendant, prays the Court for such specific relief as he conceives himself entitled to. If the defendant denies the right to relief from the facts as stated, he may, in general, take advantage of it, by a demurrer, as that is a valid bar in limine, and, if sustained, puts an end to -the litigation. It is merely an allegation on the part of the defendant, that the matters set forth in the bill, are insufficient, as set forth, to oblige him to answer. The question submitted is, does the bill, upon its face, set forth such facts as will enable a Chancellor to grant the relief asked for ? A demurrer will be sustained, as well for matter which ought to appear, as for the statement of such, as ought not to appear. And it is an admission of such, as is sufficiently stated.
The bill alleges, that one of the defendants, Jonathan Eason, was indebted to one Joshua Pender, by bond ; that the defendants, Pleasonton S. Sugg and Robert Belcher, were his sureties, and that, at their instance, he executed *502 a deed of trust on the 4th of January 1843, conveying to Lewis Belcher, as trustee, the land in dispute to indemnify them, “in consideration he should retain the possession of the said property, and in case of a sale of the same, or in any contingency, that he might be permitted to realize a benefit therefrom : and thereupon it was corruptly and fraudulently stipulated between the said Eason. Sugg and Robert Belcher, that the said Eason should execute two notes each for $500 : one to the said Sugg and the other to the said Belcher, upon a secret trust, that the amount thereof should be held by them and appropriated and used for the benefit of said Eason, and to defraud his creditors.” These facts, so set forth, the demurrer admits. But it is contended that they are not sufficient to entitle the plaintiffs to the relief they ask: that the bill ought to have gone further and alleged either a debt of Eason’s existing at the time the deed of trust was executed, and still unpaid, or that the debt which Eason owed them was contracted so soon after its execution, as to connect the purpose of making it with that of contracting. For these deficiencies I think the bill is defective and ought to be dismissed. There can be no doubt, but that the deed of trust is fraudulent and void as to all the debts of Eason existing at its execution, and the collection of which could be hindered or delayed by it. For aught that appears on the face of the bill, Eason owed no debt, but the one to Pender, which was assured by Sugg and Robert Belcher, and the deed was made at their instance and for their security. It could not therefore have been made to defraud them or Pender. And, in fact, the property so conveyed was sold by the trustee ; and it is to be presumed that the debt was paid. The plaintifFs argue that a conveyance made to defraud a creditor is void as to all creditors. That is true, and the cases of Hoke v. Henderson, 3 Dev. 12, and O’Daniel v. Crawford, 404, fully show it. If, at the time the conveyance is made, the grantor or donor, *503 owes any debt, and it becomes necessary to resort to the property so conveyed to satisfy it, the creditor has a right to do so. Those cases rather sustain the demurrer than the bill. The question here is upon the frame of the bill ’ The plaintiffs allege that they are purchasers under a judgment against Eason obtained in 1846 — near three years after the execution of the deed of trust. The bill shows that the land was sold by the trustee in January 1844, at public vendue, and purchased by the defendant Sugg, who subsequently ¿old it to the defendants, Darden and Beeman, who had notice of the originál fraud. As purchasers, the plaintiffs do not come within the exception in the 27th of Elizabeth. That extends only to purchasers from the grantor or grantees in the fraudulent conveyance. This is under neither, but directly antagonistic to both. All they can demand is to stand in the place of the creditor, under whose judgment the land was sold, and to this they are entitled, they being themselves the creditors. What then was it necessary for the plaintiffs to allege in their bill to entitle themselves to the interference of a Court of Chancery 1 This bill is in the nature of what are called fishing bills ; which are filed to find out a creditor, whose debt existed at the time of the execution of the conveyance, to subject the fund to all the creditors, as well those subsequent as antecedent. In the case of Holloway v. Millard, 1st. Mad. Ch. R. 414, the Chancellor refused an enquiry, whether the party was indebted at the time of the conveyance, because the bill laid no foundation for that enquiry. The plaintiffs were subsequent creditors, and the bill did not state that the party was indebted at the time the conveyance was made. To the same effect are the cases of Lush v. Wilkinson, 5th-384, Taylor v. Jones, 2 Atk. 600, and Read v. Livingston, 3 John. Ch. Rep. 481. It is true the bill here alleges that when the deed of trust was executed, Eason was indebted to Pender, but it at the same time shows, that it was made not in *504 fraud of the debt, but to secure it. In my opinion, to sustain such a bill as the present, it must either allege the existence of a debt of the grantors, at the time of the execution of the conveyance, the collection of which might be hindered or delayed by it, and which is still unsatisfied, or that the subsequent debt was contracted so soon after its execution, as to afford evidence, that it was made with a view to contracting it and defeating it. Here the bill does not set forth when the debt of the plaintiffs was contracted, but does state that the deed of trust was executed early in January 1843; and the judgment, under which the plaintiffs claim was rendered in November 1846 — near three years thereafter. I am at liberty to presume that at least more than a year elapsed between the time when the deed was made and the contracting of the subsequent debt. I am at liberty to make this presumption, because the plaintiffs were the subsequent creditors, and could have stated the precise time, if they had chosen, and it is necessary for every bill to state with precision, what is necessary to sustain his complaint. There is nothing alleged in the bill, which connects the contracting of the subsequent debt, with the making of the deed of trust. The bill for the above reasons is in my estimation so defective in its construction, that it cannot be sustained. I concur with his Honor that the demurrer ought to be sustained and the bill dismissed with costs.
Per Curiam.
Decreed accordingly.